Per Curiam.

A great deal of argument is advanced by counsel as to the proper terminology to be applied to the so- *474 called “agreement” signed by. Gladys and her stepchildren— whether it was a contract, a receipt, a release or an acknowledgment of a gift. Although it appears to the majority of the court to have had more of the attributes of a release, which may be perfectly valid as a unilateral contract, the difficulty with such a conclusion is that these stepchildren had nothing to release. These children had absolutely no legal claim, expectancy or any other particular status favored by the law as respects their stepmother. Anything they received at her hand they received as a result of her bounty, either in her lifetime or by will.
And this fact was, of course, well known to Gladys as evidenced by her lawyer’s statement in his letter to Lloyd that “Mrs. McCune will thereby feel free to dispose of her property in any manner she may desire.” Although she knew an “agreement” was in the process of being signed by Lloyd (assuming that the signed agreement had not been returned by Lloyd to McFadyen), she nevertheless executed a will making him a cobeneficiary with his sister in the residuum of her estate. And after the so-called “agreement” was executed by everyone concerned and Gladys had in her possession what is now contended to have been a release of all claims to her estate she nevertheless made no attempt to change the will made but a week or ten days earlier.
The residuary clause of this will could not be clearer or more inclusive. In order to render the residuary' clause ineffective and to effect an intestacy, the courts below reached out beyond the will to accept parol evidence in the form of an extra-testamentary writing which is claimed to have the effect of partially revoking the will. Section 2107.33, Revised Code, sets out the ways in which a will may be legally revoked. An “agreement” such as is involved here is not one of those ways.
Since it was apparently considered by the courts below and argued in this court, we must look briefly to the doctrine of “ademption by satisfaction,” although we fail to see its application to this case. This doctrine has usually been brought *475 into play to effect an equalization between persons as to whom a testator has directed or is presumed to have intended equality. Such is not the present case.
At the time of the execution of her will, the heirs presumptive of Gladys were her brother and sister, to both of whom she made specific legacies. These legacies came “'off the top” of her estate. The brother and sister were in a preferred position as to what the will gave them and anything that Gladys might use or give away in her lifetime was a “loss” to the insiduary donees not to the brother and sister. The gift made by Gladys to the stepchildren was therefore subtracted, not in any part from her brother and sister, but completely from the potential residuary estate.
The doctrine of “ademption by satisfaction” has not been applied to extinguish the gift of. a residuary estate or to produce intestacy with respect thereto. See 26 A. L. R. (2d), 9.
There is nothing in this record to indicate that Gladys McCune did not know what she was doing or did not have competent legal advice all along the line. In a situation that required her to do nothing, she nevertheless made a will that clearly, completely and unequivocally left the residue of her estate to her stepchildren or to the survivor of them, and that will remained unrevoked by any effective action subsequent to its execution. Under it, the appellants are entitled to the residue of the estate of Gladys McCune.

Judgment reversed.

Zimmerman, Taet, Matthias, Bell, Herbert and Peck, JJ., concur.